1

### AFFIDAVIT OF SPECIAL AGENT MATTHEW SCOTT

2

3   STATE OF WASHINGTON   )
                            )   ss
4   COUNTY OF PIERCE        )

5

6       I, Matthew Scott, being first duly sworn on oath, depose and say:

7   ### I.   AFFIANT BACKGROUND

8       1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI)
9   and have been so employed for over 14 years.  I am currently assigned to the Seattle
10  Division of the FBI, Tacoma Resident Agency. I completed twenty-and-a-half weeks of
11  training at the FBI academy, including legal classes, investigative techniques, evidence
12  preservation and collection, financial related crimes, and computer related crimes. I am
13  currently authorized to investigate and enforce violations of federal criminal statutes,
14  including those found in Title 18 and 21 of the United States Code.  As a Special Agent
15  in the Seattle Division, I have assisted in numerous investigations, including but not
16  limited to, violent crime, financial crimes, and cases of child exploitation. I have gained
17  experience through training and everyday work related to conducting these types of
18  investigations.

19      2.    Further, I am currently a federal law enforcement officer engaged in
20  enforcing the criminal laws of the United States and authorized by the Attorney General
21  to request search warrants.

22  ### II.   INTRODUCTION AND PURPOSE OF AFFIDAVIT

23      3.    I submit this affidavit in support of an application under Rule 41 of the
24  Federal Rules of Criminal Procedure for a warrant to search a residence, located at 2014
25  East 37th Street, Tacoma, Washington ("SUBJECT PREMISES"), a vehicle, a 1999 Ford
26  Explorer, Washington license plate BFZ6459 ("SUBJECT VEHICLE"), and a camping,
27  un-badged trailer that is towed behind a vehicle ("SUBJECT TRAILER") for the reasons

28

AFFIDAVIT OF SA SCOTT - 1
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  set forth below and more fully described in Attachment A, for the things specified in

2  Attachment B to this Affidavit.

3      4.    The facts set forth in this Affidavit are based on the following: my own

4  personal knowledge; knowledge obtained from other individuals during my participation

5  in this investigation, including other law enforcement officers; interviews of witnesses;

6  my review of records related to this investigation; communications with others who have

7  knowledge of the events and circumstances described herein; and information gained

8  through my training and experience.

9      5.    Because this Affidavit is submitted for the limited purpose of establishing

10 probable cause in support of the application for these search warrants, it does not set forth

11 each and every fact that I or others have learned during the course of this investigation.  I

12 have set forth only the facts that I believe are relevant to the determination of probable

13 cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§

14 18 U.S.C. §§ 1111 (Murder), 1113 (Attempt to Commit Murder), 1117 (Conspiracy to

15 Commit Murder), 7, 13 and 2, will be found in the SUBJECT PREMISES, SUBJECT

16 VEHICLE and SUBJECT TRAILER.

17                 **III.**    **STATEMENT OF PROBABLE CAUSE**

18 **A.**    **Background of Investigation**

19     6.    On September 8, 2018, Cecelia Rivero called the Tacoma Police

20 Department (TPD) communication center to report her friend, Jessica Jackson

21 ("VICTIM"), as missing.  Rivero provided the TPD communication center with

22 VICTIM's cellular telephone number.

23     7.    On or about September 11, 2018, TPD detectives contacted Rivero.  Rivero

24 stated to the detectives that she had not seen or heard from VICTIM since September 4,

25 2018.  Rivero acknowledged that VICTIM had a history of periodically leaving but

26 would routinely return after only one or two days.  Rivero was concerned about this

27 incident due to both the length of the VICTIM's absence and her concern for the

28 VICTIM's fourteen-year-old daughter who had not seen her mother since September 4,

AFFIDAVIT OF SA SCOTT - 2
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  2018, and was only temporarily residing in a home in Tacoma, Washington. Rivero
2  stated this length of absence away from her daughter was also unusual for VICTIM.

3         8.     Rivero informed TPD that she retrieved the VICTIM's daughter from this
4  Tacoma residence and brought her into her home to care for her. Rivero provided
5  detectives with the SUBJECT ADDRESS as the address where VICTIM had last been
6  seen and where VICTIM's daughter had been living since the VICTIM's disappearance.

7         9.     Pierce County Assessor information available to the public revealed that the
8  SUBJECT PREMISES are a single-family dwelling owned by Sharon Vollmer. The
9  Pierce County Assessor describes the property type as residential, the condition as
10  average, the quality as fair. The building is a single story, 908 square foot residence with
11  a 320 square foot attached garage built in 1969 with three bedrooms and one bathroom.

12        10.    TPD detectives then visited the SUBJECT PREMISES in an attempt to
13  locate the VICTIM. At that address, they contacted Irene Pease who is married to Bobbie
14  PEASE ("SUBJECT 1"). Irene Pease stated to detectives that she was aware that the
15  VICTIM had been at her residence the previous week and on or about September 4, 2018,
16  but claimed the VICTIM departed around that time. Irene Pease also told detectives that
17  SUBJECT 1 was in the process of divorcing her and he currently had a girlfriend named
18  Christina Gadea (also known as Christina Brooks). Irene Pease said the VICTIM
19  departed the residence with SUBJECT 1 and Christina Gadea on or about September 4,
20  2018. Irene Pease believed SUBJECT 1 and Christina Gadea took the VICTIM to a local
21  gas station near streets identified as "Fairbanks" and "Portland." Irene Pease believed the
22  VICTIM then got into a black car and left the area. Irene Pease claimed she did not know
23  the current whereabouts of the VICTIM.

24        11.    On September 12, 2018, Christina Gadea left a message for a TPD
25  detective stating that the VICTIM had supposedly left the state with a person identified as
26  "Mike." The TPD detective also received a call from Jeremy Warren ("SUBJECT 2")
27  that the VICTIM left with "Mike" and that "Mike" is a known drug user.

28

AFFIDAVIT OF SA SCOTT - 3
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

12.     On September 13, 2018, SUBJECT 1 left a phone message for a TPD detective and stated that he dropped the VICTIM off at the gas station at Fairbanks and Portland Avenue and she got into a black Acura being driven by a white male named "Mike." SUBJECT 1 stated that the VICTIM was supposed to call him for a ride when she was done but never called.

13.     On September 13, 2018, agents were notified by a detective with the Pierce County Sheriff Department that a deceased individual had been located in an area that may be on the property of Joint Base Lewis McChord (JBLM) located within Pierce County, Washington State. It was subsequently determined that the location where the deceased individual was discovered lies on the federally owned government property of the JBLM military installation and within the special maritime and territorial jurisdiction of the United States.

14.     On September 14, 2018, agents received a telephone call from a Pierce County Sheriff Department detective requesting that they respond to the Pierce County Medical Examiner's Office related to an autopsy being conducted on the individual that was located the previous day in the area believed to be on the property of JBLM.

15.     An FBI Agent responded to the Pierce County Medical Examiner's Office and was notified by the medical examiner that the deceased individual died as the result of three gun shot wounds to the head. During the course of that autopsy, the deceased individual was identified as the VICTIM.

16.     During the course of the autopsy, the Pierce County Medical Examiner's Office located a Saar's Market Place receipt on the person of the VICTIM. The receipt reflected that a number of items were purchased at 12:54 p.m. on September 4, 2018, from Saar's Market Place, Parkland Market Place, telephone number 253.537.0281. This particular Saar's Market Place is located at 13322 Pacific Avenue South, Tacoma, Washington. This store was located approximately 5-7 miles from where the VICTIM was found.

AFFIDAVIT OF SA SCOTT - 4
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1       17.    Pierce County Sheriff Department detectives were able to retrieve video

2   surveillance from Saar's Market Place.  A Pierce County Sheriff Department detective

3   emailed FBI investigators still photos taken from the video.  Those photos depict the

4   VICTIM and an unidentified white male entering the Saar's Market together and the

5   VICTIM and an unidentified white male at the cash register in the store.

6       18.    On September 16, 2018, investigators contacted Irene Pease and showed

7   her a still photo from one of the emails received from the Pierce County Sheriff

8   Department with the photos of the VICTIM and the unidentified white male at the Saar's

9   Market Place.  Irene Pease identified the white male as SUBJECT 2.

10      19.    Irene Pease told investigators that she believed that SUBJECT 1, SUBJECT

11  2, and the VICTIM traveled to the store together in SUBJECT 1's vehicle (SUBJECT

12  VEHICLE) and that the VICTIM then entered a black car and did not return.

13      20.    Registered owner information from Washington State Department of

14  Licensing records for the SUBJECT VEHICLE reveal it to be a 1999 Ford Explorer,

15  Washington license plate BFZ6459 is registered to SUBJECT 1 at 2014 E 37th Street,

16  Tacoma, Washington.

17      21.    On September 17, 2018, TPD Detective Jack Nasworthy contacted the FBI

18  and notified them that Linda Robinson had visited TPD Headquarters and provided

19  information that Nasworthy believed related to this investigation.

20      22.    On September 17, 2018 investigators interviewed Robinson.  Linda

21  Robinson is SUBJECT 1's sister.  Robinson stated that she contacted law enforcement

22  because she was concerned about some statements that SUBJECT 1 had recently made to

23  her.

24      23.    Specifically, Robinson stated that SUBJECT 1 had recently called

25  Robinson and asked her to get out a piece of paper and write down that Christina Gadea

26  told him to kill that lady.  SUBJECT 1 told Robinson that both SUBJECTS assaulted the

27  VICTIM and then put three "plugs" in her head.

28

AFFIDAVIT OF SA SCOTT - 5
USAO No. 2018R01121

24.     In a separate telephone call, Robinson asked SUBJECT 1 why investigators were looking for him regarding a missing person matter.  SUBJECT 1 told Robinson to read between the lines and stated "mom, dad, Betty."  Robinson told investigators that those persons are all dead.

25.     SUBJECT 1 recently visited the home of Robinson.  During that visit, SUBJECT 1 showed Robinson a new "toy."  SUBJECT 1 said the new little "toy" fit right behind his wallet in his back pocket.  The new little toy that SUBJECT 1 showed Robinson appeared to be a small silver and black gun.

26.     Robinson also stated that she recently witnessed SUBJECT 1 and Christina Gadea arguing.  During the argument, SUBJECT 1 told his girlfriend that if she did not "shut up" then he was going to put her where they "put her."

27.     Based on the above statements that SUBJECT 1 has recently made to Robinson, she believes that SUBJECT 1 and SUBJECT 2 are responsible for the disappearance and homicide of the VICTIM.

28.     Robinson also stated that on or about September 5, 2018, SUBJECT 1 told Robinson that SUBJECT 1, Christina Gadea, SUBJECT 1's minor son, SUBJECT 2, and SUBJECT 2's wife, Silvia, were going to transport a camping trailer to Forks, Washington.  Christina Gadea provided Robinson with the address to which they intended to travel.  After she was unable to reach SUBJECT 1 for a few days and fearing for the safety of SUBJECT 1's minor son, Robinson traveled to Forks to retrieve SUBJECT 1's minor son.  When Robinson arrived at the Forks address, she observed the SUBJECT VEHICLE and SUBJECT TRAILER at the location with SUBJECT 1.

29.     On September 17, 2018, investigators contacted Sharon Vollmer.  Vollmer told investigators that she has lived at the SUBJECT PREMISES for approximately 38 years.  Vollmer's daughter, Irene Pease, SUBJECT 1, and their eight-year-old son have lived at the residence for approximately eight years.  Christina Gadea, SUBJECT 1's girlfriend, also lived at the residence in the SUBJECT TRAILER parked in the attached

1   garage.  For approximately a month, SUBJECT 2 and SUBJECT 2's wife, Silvia Becker,
2   also stayed in the SUBJECT TRAILER.

3         30.    The VICTIM and her fourteen-year-old daughter initially stayed in the
4   SUBJECT PREMISES.  On or about September 2, 2018, Vollmer told the VICTIM and
5   her daughter that they needed to depart the SUBJECT PREMISES because she did not
6   have enough food to feed everyone living on her property.  Instead of leaving, the
7   VICTIM and her daughter moved to the SUBJECT TRAILER in the garage.

8         31.    On September 19, 2018, investigators interviewed SUBJECT 2 after he
9   waived his Miranda rights.  Investigators subsequently learned SUBJECT 2 has
10  participated in the Special Olympics and may suffer from a mental impairment.
11  Investigators confirmed with SUBJECT 2 that he is 30-years-old, has obtained his
12  General Equivalency Diploma, has previously obtained a Washington State Driver's
13  License, has legally married, divorced and remarried.  SUBJECT 2 has been periodically
14  employed throughout his life.  SUBJECT 2 indicated that he does smoke marijuana but
15  denied ingesting any other controlled substances.

16        32.    SUBJECT 2 and his wife had lost their home and had moved into the
17  residence of SUBJECT 1 about three weeks before the incident.  Also at the residence at
18  the time of the incident were Irene Pease, her mother, SUBJECT 1, Christina Gadea, the
19  VICTIM, and the VICTIM's daughter.

20        33.    Concerning the VICTIM's death, SUBJECT 2 told investigators that he
21  was present for her murder.  According to SUBJECT 2, SUBJECT 1 invited SUBJECT 2
22  and VICTIM to go to the store.  After they went to the store, specifically Saar's Market,
23  SUBJECT 1 asked SUBJECT 2 if he wanted to go somewhere and "pop a couple rounds
24  off" by shooting SUBJECT 1's gun, a .22 caliber handgun.

25        34.    SUBJECT 1 was driving the SUBJECT VEHICLE, SUBJECT 2 was the
26  front passenger, and the VICTIM was seated in the rear passenger seat behind SUBJECT
27  2. SUBJECT 1, the driver, drove his vehicle to a wooded area near some railroad tracks.
28  They all exited the vehicle and SUBJECT 1 went to the rear of the vehicle while

AFFIDAVIT OF SA SCOTT - 7
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  SUBJECT 2 and VICTIM walked to the front of the vehicle.  SUBJECT 1 grabbed a can
2  of police-grade pepper spray and sprayed the VICTIM's face.  SUBJECT 1 then retrieved
3  an aluminum bat and struck the VICTIM about her face and body until she fell to the
4  ground.  SUBJECT 1 then pulled out his gun from his holster and shot VICTIM three
5  times in the head.

6      35.    SUBJECT 2 stated to investigators that SUBJECT 1 told him to tell
7  anyone, that asked about VICTIM's disappearance, that she got into a black Acura.
8  SUBJECT 2 acknowledged that he conveyed this information to a detective investigating
9  the VICTIM's disappearance.  SUBJECT 2 got the phone number for the detective from
10 Irene Pease.  SUBJECT 2 stated to investigators that he has never possessed a gun.

11     36.    On September 17, 2018, investigators interviewed Tammy Salter.  Salter
12 stated that SUBJECT 1, SUBJECT 2, Christina Gadea, and Silvia Becker arrived at her
13 residence in Forks, Washington, in the early morning hours of September 6, 2018.  Salter
14 stated that they arrived in the SUBJECT VEHICLE towing the SUBJECT TRAILER.

15     37.    Three or four days after their arrival, SUBJECT 1 and Christina Gadea left
16 Salter's residence while the SUBJECT TRAILER remained on her property.  After
17 SUBJECT 1 and Gadea left Forks, SUBJECT 2 told Salter that SUBJECT 2 had stored a
18 gun in the trailer and that SUBJECT 2 had noticed it missing when he went to retrieve it
19 after finding out SUBJECT 1 was on his way back to Forks.

20     38.    At 9:14 a.m. on September 12, 2018, Salter received a text message from
21 SUBJECT 1's telephone stating "Hi good morning and me christina and can please get
22 give this number to jerrame please hear is detective number it is area code two five three
23 830-6589 and I heard the you can tell him I heard the girl left with a guy named Mike
24 thank you very much have a good day."

25     39.    On September 17, 2018, in or near Forks, Washington, SUBJECT 1 was
26 contacted by local law enforcement on a collateral matter while travelling in the
27 SUBJECT VEHICLE and pulling the SUBJECT TRAILER.  Irene Pease and Christina
28 Gadea were passengers in the SUBJECT VEHICLE.

AFFIDAVIT OF SA SCOTT - 8
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

40. On September 19, 2018 SUBJECT VEHICLE was located in Forks, Washington. Local law enforcement initiated a traffic stop of SUBJECT VEHICLE as they were aware that federal agents were attempting to locate SUBJECT VEHICLE in regards to this homicide investigation. Local law enforcement subsequently learned that SUBJECT 1, Irene Pease, and Christina Gadea were all travelling in SUBJECT VEHICLE at the time of the traffic stop. During the course of the stop, law enforcement observed that Irene Pease appeared to have been assaulted. Irene Pease indicated SUBJECT 1 had caused her injuries and law enforcement apprehended SUBJECT 1. Local law enforcement then secured and impounded SUBJECT VEHICLE and it is currently at the Clallam County Sheriff Department's secure evidence lot in Port Angeles, Washington.

41. SUBJECT 1 is currently incarcerated at the Clallam County Corrections Facility in Port Angeles, Washington, on $250,000 bond and is charged with Assault in the fourth degree in violation of Washington State Code 9A.36.041.2.

42. Following the arrest of SUBJECT 1, local law enforcement located the SUBJECT TRAILER that appeared to be abandoned. Local law enforcement also impounded the SUBJECT TRAILER and it is currently being held by the Clallam County Sheriff Department.

43. On September 19, 2018, investigators interviewed SUBJECT 1 as he is in custody in Port Angeles, Washington. After waiving his Miranda rights, SUBJECT 1 stated to investigators that the last time he saw VICTIM was when he took her to the Market Place on Pacific Avenue with SUBJECT 2. The VICTIM went into the store, did some shopping, brought the groceries to the car, and met up with "Mike" who was driving a black Acura. According to SUBJECT 1, SUBJECTs 1 and 2 returned to the residence with the groceries that were purchased after the VICTIM left and did not leave the residence for the rest of the day. SUBJECT 1 stated to investigators that he would like to know what happened to the VICTIM.

AFFIDAVIT OF SA SCOTT - 9
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1       44.    SUBJECT 1 also told investigators to speak with Linda Robinson and

2   SUBJECT 2. SUBJECT 1 claimed that both of these individuals would provide reliable

3   and truthful information to investigators about the VICTIM and her whereabouts.

4       45.    On September 21, 2018, investigators interviewed Silvia Becker.  Becker

5   stated to investigators that she was home when SUBJECT 1 and SUBJECT 2 returned

6   and she saw blood on the clothing of SUBJECT 1 and SUBJECT 2.  Before they left she

7   saw SUBJECT 1 with a gun.

8       46.    On September 21, 2018, investigators listened to a jail call between

9   SUBJECT 1 and Linda Robinson.  During the call, SUBJECT acknowledged that he

10  knew the VICTIM was killed where her body was discovered but claimed SUBJECT 2

11  was responsible.

12                **IV.    CONCLUSION**

13      47.    Based on the foregoing, I believe there is probable cause that evidence,

14  fruits, and instrumentalities of violations of 18 U.S.C. §§ 1111 (Murder), 1113 (Attempt

15  to Commit Murder), 1117 (Conspiracy to Commit Murder), 7, 13 and 2, are located in the

16  SUBJECT PREMISES, SUBJECT VEHICLE and SUBJECT TRAILER as more fully

17  described in Attachment A to this Affidavit,  I therefore request that the court issue

18  warrants authorizing a search of the SUBJECT PREMISES, SUBJECT VEHICLE and

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

AFFIDAVIT OF SA SCOTT - 10
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  SUBJECT TRAILER for the items more fully described in Attachment B hereto,

2  incorporated herein by reference, and the seizure of any such items found therein.

3

4

5

6  MATTHEW SCOTT, Affiant

7  Special Agent
   Federal Bureau of Investigation

8

9

10  SUBSCRIBED and SWORN to before me this 27th day of September, 2018.

11

12

13

14  THERESA L. FRICKE
    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SA SCOTT - 11
USAO No. 2018R01121

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A**

SUBJECT PREMISES, located at 2014 East 37th Street, Tacoma, Washington, more fully described as a single story 908 square foot residence with a 320 square foot attached garage, three bedrooms and one bathroom.





AFFIDAVIT OF SA SCOTT - 1
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1

2   SUBJECT VEHICLE, more fully described as a 1999 Ford, Washington license

3 plate BFZ6459.





AFFIDAVIT OF SA SCOTT - 2
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1    SUBJECT TRAILER, more fully described as a un-badged camper trailer that is

2  towed behind a vehicle.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





AFFIDAVIT OF SA SCOTT - 3
USAO No. 2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

## ATTACHMENT B

### Items to be Seized

The items to be seized are the following items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means of committing Murder, in violation of Title 18, United States Code, Sections 1111, 1113, 1117, 7, 13 and 2:

1. Firearms and ammunition, including shell casings and magazines, and records related to the purchase, sale, or other transfer of firearms and ammunition;

2. Indicia of ownership and use of the Subject Vehicle, Subject Trailer, and Subject Premises;

3. Bodily fluids, substances, and matter, including blood;

4. Clothing, shoes, and backpacks or duffle bags used to transport clothing/personal belongings;

5. Aluminum baseball bats and other items that could be used as weapons;

6. Mace;

7. Women's jewelry;

8. The following grocery items and/or related packaging – Sunchips, Trolli Apple O's, Gummi Candy, Western Family buns, Hamburger, Pancake and Sausage, Sprite, Mountain Dew, Java Energy drink, Banana Fruit Candy;

9. Drug paraphernalia;

10. Communications in any form including but not limited to:

   a. Text messaging;

   b. Internet chat files, including Facebook, Skype, and other similar social networking sites;

   c. Email communications;

   d. Voice mail messages and voice notes;

   e. Paper and printed documents, and all other forms of electronic documents containing communications;

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

11. Call logs, including incoming and outbound phone calls dialed or completed and any related phone number;

12. Contact lists and address books;

13. Photographs, video recordings, and other multi-media files;

14. Electronically-stored data identifying geographic locations based on the tracking and mapping by a GPS device;

15. Financial Records: records, documents and other items that show the receipt and expenditure of cash, currency, negotiable instruments, including but not limited to wire transfers, pre-pay cash cards, bank accounts, and other financial transactions;

**For Digital Devices, Electronic Storage Media, and Components**

16. Digital devices, electronic storage media, and components are to be seized and examined as follows:

a. The device, as it appears to be capable of being used to commit or further the crimes outlined above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes;

b. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

c. Any physical keys, encryption devices, dongles, or similar physical items which are necessary to gain access to the computer equipment, storage devices, or data;

d. Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices, or data; and

e. All records, documents, programs, applications, or materials created, modified, or stored in any form, that show the actual user(s) of the device during any time period in which the device was used to commit the crime referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web

ATTACHMENT B - 2
USAO #2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1    pages; email addresses used from the computer; MAC IDs and/or Internet Protocol

2    addresses used by the device; email, instant messages, and other electronic

3    communications; address books; contact lists; records of social networking and online

4    service usage; and software that would allow others to control the digital device such as

5    viruses, Trojan horses, and other forms of malicious software.

6              f.      Evidence of user attribution showing who used or owned the device

7    at the time the things described in this warrant were created, edited, or deleted, such as

8    logs, phonebooks, saved usernames and passwords, documents, and browsing history;

9         As used above, the terms records, documents, programs, applications or materials

10   includes records, documents, programs, applications or materials created, modified or

11   stored in any form including digital or electronic form.

12       *Search Procedure*

13       17.   In searching for data capable of being read, stored, or interpreted by a

14   computer or storage device, law enforcement personnel executing the search warrant will

15   employ the following procedure:

16              a.      Law enforcement personnel will examine the device to extract and

17   seize any data that falls within the list of items to be seized as set forth in the warrant and

18   in this attachment.    To the extent they discover data that falls outside the scope of the

19   warrant that they believe should be seized (e.g., contraband or evidence of other crimes),

20   they will seek an additional warrant.

21              b.      Law enforcement personnel will use procedures designed to identify

22   items to be seized under the warrant.  These procedures may include the use of a "hash

23   value" library to exclude normal operating system files that do not need to be searched.

24   In addition, law enforcement personnel may search for and attempt to recover deleted,

25   hidden, or encrypted data to determine whether the data falls within the list of items to be

26   seized under the warrant.

27              c.      Law enforcement personnel will perform an initial search of the

28   original device or image within a reasonable amount of time not to exceed 120 days from

ATTACHMENT B - 3
USAO #2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  the date of execution of the warrant.  If, after conducting the initial search, law

2  enforcement personnel determine that the device or image contains any data falling

3  within the list of items to be seized pursuant to this warrant, the government will retain

4  the device to, among other things, litigate the admissibility/authenticity of the seized

5  items at trial, ensure the integrity of the copies, ensure the adequacy of chain of custody,

6  and resolve any issues regarding contamination of the evidence.  If the government needs

7  additional time to determine whether the device or image contains any data falling within

8  the list of items to be seized pursuant to this warrant, it may seek an extension of the time

9  period from the Court within the original 120-day period from the date of execution of

10  the warrant.  The government shall complete the search of the Device or image within

11  180 days of the date of execution of the warrant.  If the government needs additional time

12  to complete the search, it may seek an extension of the time period from the Court within

13  the original 180-day period from the date of execution of the warrant.

14           d.       If, at the conclusion of the search, law enforcement personnel

15  determine that particular files or file folders on the device or image do not contain any

16  data falling within the list of items to be seized pursuant to the warrant, they will not

17  search or examine those files or folders further without authorization from the Court.

18  Law enforcement personnel may continue to examine files or data falling within the list

19  of items to be seized pursuant to the warrant, as well as data within the operating system,

20  file system, or software application relating or pertaining to files or data falling within the

21  list of items to be seized pursuant to the warrant (such as log files, registry data, and the

22  like), through the conclusion of the case.

23           e.       If the device does not contain any data falling within the list of items

24  to be seized pursuant to this warrant, the government will return the device to its owner

25  within a reasonable period of time following the search of the device and will seal any

26  image of the device, absent further authorization from the Court.

27

28  **The seizure of digital devices and/or their components as set forth herein is
     specifically authorized by this search warrant, not only to the extent that such**

ATTACHMENT B - 4
USAO #2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  digital devices constitute instrumentalities of the criminal activity described above,
2  but also for the purpose of the conducting off-site examinations of their contents for
   evidence, instrumentalities, or fruits of the aforementioned crimes.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT B - 5
USAO #2018R01121

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806